UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TRUSTEES OF TEAMSTERS UNION NO. 142 PENSION FUND, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | |
| AJ & S TRUCKING, INC., et al., | ) ) | |
| Defendants | ) | CAUSE NO. 2:13-CV-162 RLM |
| ********************************************* | | |
| AJ & S TRUCKING, INC., | ) ) | |
| Third-Party Plaintiff | ) ) | |
| vs. | ) ) | |
| TEAMSTERS UNION LOCAL NO. 142, | ) ) | |
| Third-Party Defendant | ) | |

OPINION and ORDER

This cause is before the court on two motions: defendant AJ&S Trucking, Inc. is seeking a preliminary injunction against the Trustees of Teamsters Union No. 142 Pension Fund (Pension Fund) enjoining assessment of withdrawal liability, and third-party defendant Teamsters Union Local No. 142 (Local 142) is asking that the third-party complaint of AJ&S be dismissed. A hearing on both motions was held on December 18, 2013. Based on a review of the parties' submissions and arguments, the court concludes that both motions must be denied.

I. BACKGROUND

AJ&S, a trucking company located in Whiting, Indiana, has been a party to a collective bargaining agreement with Local 142 since 2000. As a member of Local 142, AJ&S paid employee contributions into the Pension Fund until problems arose in April 2013 relating to contract negotiations (or non-negotiations) with Local 142.

The Pension Fund alleges in its complaint and in Count 1 of its amended complaint that Local 142 notified AJ&S on April 5, 2013 that, effective that date, Local 142 would no longer represent AJ&S's employees. The Fund says this notification effectuated AJ&S's complete withdrawal from the Pension Fund during the plan year ending June 30, 2013. The Pension Fund says that as a result of AJ&S's withdrawal, a withdrawal liability assessment of $1.2 million was made against AJ&S. The Pension Fund notified AJ&S of the assessment and of the company's obligation to begin making quarterly payments on May 1, 2013. When AJ&S made no payments, the Pension Fund demanded the full assessment amount and, on May 14, the Fund filed suit in this court pursuant to 29 U.S.C. §§ 1132(a)(3), (e)(1), and (f); 29 U.S.C. §§ 1381-1461; and 29 U.S.C. § 301(a).

The Pension Plan added claims and parties to this action in its amended complaint, which was filed after the pending motions became ripe. The Pension Fund claims in Count 2 of the amended complaint that a payroll audit for the period July 1, 2008 through September 30, 2012 shows that AJ&S owes, but

hasn't paid, moneys to the Pension Fund and other union entitles due to past reporting errors by AJ&S. The Pension Funds also named Great American Insurance Company as a defendant in Count 3 of the amended complaint, alleging that Great American had wrongfully failed to pay the Pension Fund's bond claim. The claims in Counts 2 and 3 of the amended complaint aren't at issue in today's motions.

AJ&S's third-party complaint against Teamsters Union Local 142 alleges that Local 142 breached the CBA by repudiating the agreement illegally. AJ&S maintains Local 142's April 5, 2013 notice to the company that the union was disclaiming any interest in representing AJ&S employees was untimely under Article 30 of the CBA and 29 U.S.C. § 158(d)(1), so, AJ&S says, all parties are still bound by the terms of the current CBA and any future CBA negotiated between Local 142 and members of the Four County Highway Contractors, of which AJ&S is a member. AJ&S claims it has suffered and will continue to suffer loss of sales, contracts, profits, and good will based on Local 142's unlawful conduct.

## II. FACTS

AJ&S was a principal negotiator and signatory of the 2010 CBA, entitled "Articles of Agreement for General Construction of Heavy Highway Projects for Lake and Porter Counties, Indiana, and Calumet City, Illinois," between the Union (Teamsters Union Local No. 142) and the Employer (defined as "those members of the Four County Highway Contractors Group who have assigned their

bargaining rights to The Group and those individual employers who, although not having assigned their bargaining rights to The Group, have agreed to become signatory to this Agreement"). AJ&S is a member of the Four County Highway Contractors (The Group).

Article 30 of the CBA, entitled "Contract Duration" and referred to as the "evergreen clause," reads as follows:

> This Agreement shall become effective June 1, 2010, and shall continue in full force and effect until May 31, 2013, and will continue thereafter unless notice is given in writing by either party sixty (60) days prior to May 31, 2013, or sixty (60) days prior to May 31st of any year thereafter and shall remain in full force and effect until superseded by a New Agreement.

The preface to the CBA states that all parties have "mutually understood and agreed" that all provisions of the Agreement are "binding upon the parties to the Agreement during the terms of this Agreement and any renewal period thereof."

By letter dated March 1, 2013, Local 142 sent the following notice to members of The Group, including AJ&S: "Re: Negotiation Notice of the Articles of Agreement. Please accept this letter as official notification that we desire to open for negotiation the Union Agreement now in effect between your firm and Teamsters Local Union No. 142. Please have your authorized representative contact Mitch Sawochka . . . with available dates in order to mutually set the time to commence such negotiations." Members of The Group, including AJ&S, tendered to Local 142 a document entitled "Multi-Employer Bargaining

Agreement," dated March 16, informing Local 142 that all members of The Group were agreeing to enter into negotiations on the CBA.

On March 25, Richard Knipp, Secretary-Treasurer of Local 142, sent a letter to Keith Rose, Chairman of The Group, informing him that Local 142 "does not consent to AJ&S Trucking, Inc. joining in on multi-employer bargaining. We intend to deal with AJ&S Trucking, Inc. separately." Mr. Knipp didn't send a copy of that letter to AJ&S.

Keith Rose forwarded Mr. Knipp's letter to AJ&S Trucking President Annette Perz on March 28 and informed her that he had discussed the matter with counsel, who Mr. Rose said explained to him that "the members of a bargaining group are subject to 'mutual agreement' between the Union and the contractor group. Therefore, according to [counsel], Local 142 is within their legal rights with their request/position."

On April 4, AJ&S submitted a request to Local 142 for a list of union members from which AJ&S could hire drivers for an upcoming contract. AJ&S says that tendering such a request was the parties' regular practice under paragraph 26 of the CAB. Local 142 responded to AJ&S via letter from Richard Knipp, dated April 5, saying that "effective immediately, Teamsters Local Union No. 142 has chosen to 'disclaim any interest' in further representing employees at AJ&S Trucking, Inc." Local 142 sent further correspondence to AJ&S – from Jay Smith, Fund Manager, dated April 17, 2013 – addressing the "complete withdrawal of AJ&S Trucking from the Teamsters Union No. 142 Pension Fund

during the plan year ending June 30, 2013." Mr. Smith reported that the Pension Fund had determined AJ&S's withdrawal liability assessment to be $1,217,452.00, which was to be paid in thirty-five quarterly installments of $44,800, starting May 1, 2013. Mr. Smith added that if AJ&S failed to make any payment when due, "the entire balance will become immediately due and payable and the Fund will assess interest from the due date and will undertake appropriate legal action to collect the withdrawal liability."

On May 1, AJ&S's counsel, Gregory Lyman, wrote to Local 142 stating that "AJ&S has taken absolutely no action to withdraw from the Pension Fund. [AJ&S] has not ceased covered operations nor has it permanently ceased to have an obligation to contribute under the plan [nor] has there been a complete withdrawal under ERISA Section 4203." Mr. Lyman complained that Local 142's letter contained no facts that would support an assertion of withdrawal liability on AJ&S, and AJ&S believed the CBA was still in effect. Counsel concluded that if the letter had been sent to AJ&S in error, Local 142 should retract the letter; alternatively, Local 142 should "provide the factual basis for [its] assertion of complete withdrawal so that AJ&S Trucking can respond and assert its rights for review under ERISA Section 4219 and 4221."

Counsel for Local 142 responded to AJ&S's request for additional information by stating that even though ERISA Sections 4219 and 4221 "allow an employer to ask the pension plan to review any specific matter relating to the withdrawal liability assessment and also provide an arbitration procedure to

6

resolve disputes, these sections do not provide for any form of 'discovery,' [so] the Pension Fund will respectfully decline to provide a further response to your questions, except in the context of a review pursuant to ERISA Section 4219(b)(2)."

On May 14, the Pension Fund filed suit against AJ&S in this court seeking recovery of the entire amount of the withdrawal liability assessment. AJ&S filed a motion for preliminary injunction on July 8, asking that the Pension Fund be enjoined from collecting any withdrawal liability from the company. On that same date, AJ&S also filed a third-party complaint against Local 142, alleging that Local 142 breached the CBA by illegally repudiating the agreement and acted with the Pension Plan and union officers and agents "with the deliberate purpose and design of damaging and disrupting AJ&S's business in full recognition and disregard of the fact that it violates the provisions of the collective bargaining agreement." Local 142 thereafter moved to dismiss the third-party complaint.

The motion for preliminary injunction and motion to dismiss are addressed separately below.

### III. AJ&S's Motion for Preliminary Injunction

AJ&S seeks a preliminary injunction against the Pension Fund enjoining assessment of withdrawal liability and also seeks a determination that AJ&S is still subject to an agreement with Local 142. AJ&S claims that "allowing this lawsuit to move forward and permitting any demand for interim payments would be catastrophic for AJ&S."

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (*quoting* 11A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948, pp. 129-130 (2d ed. 1995)). "The purpose of a preliminary injunction is to minimize the hardship to the parties pending resolution of their lawsuit." Anderson v. U.S.F. Logistics (IMC), Inc., 274 F.3d 470, 474 (7th Cir. 2001). A party seeking a preliminary injunction must demonstrate a reasonable likelihood of success on the merits of its claim; that absent an injunction, the proponent is likely to suffer irreparable harm; the harm the proponent would suffer without the injunction is greater than the harm the preliminary relief would inflict on the opponent; and the injunction is in the public interest. Michigan v. United States Army Corps of Engineers, 667 F.3d 765, 769 (7th Cir. 2011); Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008). "[T]he court then weighs all these factors employing a sliding-scale approach. That is, the more likely the [proponent's] chance of success on the merits, the less the balance of harms need weigh in its favor." Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002).

### (A) Reasonable Likelihood of Success

The threshold consideration in a preliminary injunction motion is the moving party's likelihood of success on the merits of the underlying claim.

8

<u>Barbecue Marx, Inc. v. 551 Ogden, Inc.</u>, 235 F.3d 1041, 1043 (7th Cir. 2000); <u>Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.</u>, 149 F.3d 722, 726 (7th Cir. 1998).

AJ&S's main focus is the reasonable likelihood of its success on the merits of its claim against Local 142, not necessarily the likelihood of its success against the Pension Fund, the actual plaintiff in the withdrawal liability dispute. AJ&S argues that Local 142's withdrawal of representation of AJ&S employees was invalid and illegal: the CBA at issue wasn't set to expire until May 31, 2013, and because no timely notice of termination was given to AJ&S, the CBA remains in effect for at least one more year. AJ&S claims that Local 142's illegal repudiation of the CBA can't justify the imposition of withdrawal liability on AJ&S.

AJ&S relies on Article 30 of the CBA:

> This Agreement shall become effective June 1, 2010, and shall continue in full force and effect until May 31, 2013, and will continue thereafter unless notice is given in writing by either party sixty (60) days prior to May 31, 2013, or sixty (60) days prior to May 31st of any year thereafter and shall remain in full force and effect until superseded by a New Agreement.

AJ&S says its position is also supported by the requirement of the National Labor Relations Act that "no party to [a collective bargaining agreement] shall terminate or modify such contract, unless the party desiring such termination or modification (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof . . . ." 29 U.S.C. § 158(d).

AJ&S insists that the actions of Local 142 and the Pension Fund didn't comply with the terms of the CBA or 29 U.S.C. § 158(d) as shown by the timeline of events:

> (1) Local 142's written repudiation to AJ&S, dated April 5 (57 days before the May 31 expiration of the CBA);

> (2) the Pension Fund's letter to AJ&S asserting withdrawal liability on the part of AJ&S, dated April 17 (44 days before May 31);

> (3) the Pension Fund's determinaiton of the amount of withdrawal liability owed by AJ&S (30 days before expiration of the CBA); and

> (4) the Pension Fund's lawsuit, filed May 14 (17 days before the CBA expired).

AJ&S concludes that the company didn't withdraw from the CBA and Local 142's withdrawal was invalid, so the Pension Fund's imposition of the withdrawal liability assessment was premature. AJ&S asks that this case be dismissed or the Pension Fund be prohibited from attempting to collect the entirety, or any interim amounts, of the withdrawal liability assessment from AJ&S.

The Pension Fund responds that its notification of withdrawal liability to AJ&S was valid. The Pension Fund says Local 142 provided the Fund with a copy of Local 142's notification to AJ&S that Local 142 was disclaiming any interest in representing AJ&S employees. According to Jay Smith, Fund Manager, the Pension Fund "can only accept contributions based on an agreement between the

employer and the Union," and Local 142's "disclaimer of representation terminated the CBA." Resp., Exh. 2 (Smith Aff.), ¶¶ 12, 13. Mr. Smith reports that AJ&S made fund contributions for March 2013, but has made no contributions to the Fund since that time, and the company hasn't provided any reports to the Fund of hours worked by company employees. Smith Aff., ¶ 14. Mr. Smith says he notified AJ&S of the withdrawal liability assessment on April 17, Smith Aff., ¶ 17; AJ&S failed to make its first installment payment on May 1, Smith Aff., ¶ 18; and "considering [AJ&S's] earlier missed payments and failure to cooperate with the payroll audit, the Fund determined that AJ&S was in default and filed a lawsuit on May 14, 2013 for collection of withdrawal liability amounts." Smith Aff., ¶ 18. Mr. Smith says AJ&S has made no payments towards the withdrawal liability assessment. Smith Aff., ¶ 21.

AJ&S and the Pension Fund dedicate most of their briefs to arguing the (in)validity and/or (un)timeliness of Local 142's withdrawal of representation. But whether the notice of withdrawal provided by Local 142 was sufficient or timely isn't a challenge to the actions of the Pension Plan in assessing AJ&S's withdrawal liability. When disputes arise over the issue of withdrawal, the employer still must make interim payments on the withdrawal liability based on Congress's enactment of a "pay now, dispute later" approach. Chicago Truck Drivers v. El Paso CGP Co., 525 F.3d 591, 595 (7th Cir. 2008); Central States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1016 (7th Cir. 2001). "Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor .

. . notwithstanding any request for review or appeal of determinations of the amount of such liability or schedule." 29 U.S.C. § 1399(c)(2).

The requirement of interim payments can be excused if AJ&S can show that (1) the Pension Fund's claim isn't colorable, and (2) AJ&S will suffer severe financial hardship if compelled to make interim payments. Central States Pension Fund v. Bomar Nat'l, 253 F.3d at 1016. To have a colorable claim, the Pension Fund "need only to be able to 'honestly plead' that it deserved payments, not that it would win." Central States Pension Fund v. Bomar Nat'l, 253 F.3d at 1019. AJ&S hasn't alleged or argued that the Pension Fund can't honestly plead that it properly assessed the payments. AJ&S claims the company would suffer severe financial hardship if it has to pay any withdrawal liability amount, but without meeting the first part of the test, AJ&S can't be exempted from having to pay the withdrawal liability.

AJ&S likens its situation to that in Central States, SE & SW Areas Pension Fund v. Hunt Truck Lines, Inc., 204 F.3d 736, 740 (7th Cir. 2000), in which the pension fund was prohibited from collecting liability payments because withdrawal liability had been assessed about two months before the actual withdrawal. But the parties in Hunt Truck Lines agreed that the withdrawal liability was assessed prematurely so the fund couldn't "honestly plead" that it had assessed the employer's liability after withdrawal: "[I]f the fund could not honestly plead that it assessed the employer's liability after withdrawal, it could not enforce an assessment that was not envisioned by the statute." Central States Pension Fund

v. Hunt Truck Lines, 204 F.3d at 742; *see also* Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 140 (3d Cir. 1997) ("Our jurisdiction is limited to ordering the employer to make interim payments once the pension fund has demonstrated that it complied with the statutory requirements for calculating liability and notifying the employer.").

Hunt Truck Lines was later examined by the court in Central States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011 (7th Cir. 2001), which explained that "*Hunt Truck Lines* did not carve out a second exception to the MPPAA, but rather addressed a limited factual scenario in which an award of interim liability payments would be senseless: *the parties agreed that the notice was premature*. . . . In other words, because it was obvious that the assessment of liability was premature, we were not undermining the MPPAA by refusing to award interim payments. We could not award payments that the fund was – without doubt – not entitled to collect." 253 F.3d at 1016-1017 (emphasis added). AJ&S and the Pension Fund haven't agreed that the assessment of withdrawal liability was premature, so Hunt Truck Lines doesn't support AJ&S's position.

The Pension Fund says it relied on information provided to it by Local 142 that Local 142 no longer represented AJ&S employees and that AJ&S had withdrawn from the CBA, and those actions entitled the Fund to honestly plead that it is entitled to the withdrawal liability. AJ&S can't meet the requirements to be exempted under the MPPAA, and the legal authority upon which the company relies is distinguishable. While AJ&S might  be able to dispute withdrawal liability

13

via arbitration[1], it must still pay now and pursue its claims of lack of notice by the Union and its own non-withdrawal separately.

The first factor of the preliminary injunction analysis weighs against AJ&S: AJ&S hasn't established a reasonable likelihood of success on the merits of the Pension Fund's claim for withdrawal liability against the company.

### (B) No Adequate Remedy at Law and (C) Irreparable Harm

The next factors needed for entry of a preliminary injunction are a lack of adequate remedy at law and a showing that irreparable harm will result of the injunction isn't granted. Lambert v. Buss, 498 F.3d 446, 451 (7th Cir. 2007). "An injury is irreparable for purposes of granting preliminary injunctive relief only if it cannot be remedied through a monetary award after trial." East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., 414 F.3d 700, 703 (7th Cir. 2005). Because "speculative injuries do not justify this extraordinary remedy," id. at 704, "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." Id. at 705-706; see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."). "To demonstrate irreparable injury, [AJ&S] must show that [it] will suffer harm that cannot be prevented or fully

---

[1] Counsel for the Pension Fund stated at the December 18 hearing that the time for AJ&S to challenge the withdrawal liability via arbitration had passed, while counsel for AJ&S disputed that the time to pursue arbitration on the issue had passed.

rectified by the final judgment after trial." <u>Anderson v. U.S.F. Logistics (IMC), Inc.</u>, 274 F.3d 470, 478 (7th Cir. 2001). "A plaintiff may suffer irreparable harm if the nature of the loss makes monetary damages difficult to calculate." <u>East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.</u>, 414 F.3d at 705.

AJ&S hasn't alleged or argued that it doesn't have an adequate remedy at law; in fact, the company is appealing a December 11, 2013 decision of the National Labor Relations Board relating to the issues of whether Local 142's notice was timely and appropriate and whether the union unequivocally disclaimed interest in representing AJ&S's employees.

With respect to the issue of irreparable harm, AJ&S says it might be forced out of business if required to remit the entire withdrawal liability amount, but AJ&S hasn't addressed the ramifications of paying smaller amounts based on the monthly schedule set up by the Pension Plan.

These two factors weigh against AJ&S.

### (D) Balance of Hardships

"The balance between the harm to the plaintiff if injunctive relief is denied and the harm to the defendant if it is granted is a critical consideration in deciding whether to grant a preliminary injunction." <u>Ayres v. City of Chicago</u>, 125 F.3d 1010, 1012 (7th Cir. 1997). "In balancing the harms, the court must weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose."

Foodcomm Int'l v. Barry, 328 F.3d 300, 305 (7th Cir. 2003); *see also* Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1120-1121 (7th Cir. 1997) (in balancing the harms, "the irreparable harm the nonmovant will suffer if an injunction is granted is weighed against the irreparable damage the movant will suffer if it is not").

Neither party has addressed this consideration specifically. AJ&S says it will be harmed without the injunction, and the Pension Plan maintains it's entitled to collect the withdrawal liability. While this factor seems to weigh in favor AJ&S, especially if AJ&S must remit the withdrawal liability in a lump sum, the company hasn't addressed the ramifications of paying smaller amounts based on the monthly schedule the Pension Plan initially proposed.

### *(E) Public Interest*

"The final factor to be considered in conjunction with a preliminary injunction is the public interest, which is the effect that granting or denying the injunction will have on nonparties." Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1121 (7th Cir. 1997); *see also* Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir. 1998) (party seeking preliminary injunction must demonstrate that "the preliminary injunction will not harm the public interest").

Non-parties that may have some interest in this dispute are the other members of The Group. AJ&S hasn't addressed how its dispute with Local 142

16

and the various union funds might affect the other employers subject to the CBA, and the parties have provided no information about whether the status of contract negotiations has been or will be affected in any way by the absence of AJ&S from those negotiations.

Based on the foregoing, the court concludes that AJ&S hasn't carried its burden of persuasion on the elements necessary for the issuance of a preliminary injunction, so its request for an injunction must be denied. The claims of the Pension Fund and other union entities against AJ&S continue to pend, no decision on the merits has been made, and no final judgment has been entered, so the court denies the Pension Fund's requests, made orally at the December 18 hearing, that AJ&S be ordered to immediately begin paying on the withdrawal liability assessment and that the Fund be permitted to seek an interim award of attorney's fees.

## IV. Local 142's Motion to Dismiss

The facts applicable to this motion are as follows. The CBA between Local 142 and The Group, of which AJ&S is a member, had an effective term of June 1, 2010 through May 31, 2013. Local 142 sent written notice on March 1, 2013 to AJ&S and the other members of The Group expressing the union's desire "to open

17

for negotiation the Union Agreement." AJ&S responded to Local 142 on March 16 indicating its desire to enter into the negotiations as a member of The Group.

On March 25, Local 142 sent notice to The Group president, but not directly to AJ&S, stating that Local 142 didn't want AJ&S to be a part of the multi-employer bargaining unit or the CBA negotiations. On April 4, AJ&S submitted a request to Local 142 for a list of union members from which the company could hire drivers; the next day, Local 142 notified AJ&S that the union was disclaiming all interest in further representation of AJ&S's employees. AJ&S filed a third-party complaint against Local 142, alleging that Local 142's actions amounted to a breach of the CBA.

AJ&S bases its claims against Local 142 on the following provision of the CBA:

> The Agreement shall become effective June 1, 2010 and shall continue in full force and effect until May 31, 2013 and will continue thereafter unless notice is given, in writing, by either party sixty days prior to May 31st of any year thereafter and shall remain in full force and effect until superseded by a new agreement.

CBA Article 30; *see also* 29 U.S.C. § 158(d)(1). AJ&S contends that the June 2010-May 2013 CBA automatically renewed because no termination notices were exchanged between the company and Local 142. AJ&S also claims that Local 142's April 5 notice of the union's withdrawal of representation was untimely because that notice provided AJ&S with less than sixty days' notice prior to the expiration of the CBA. AJ&S concludes that Local 142's breach of the CBA has resulted in AJ&S's loss of sales, contracts, profits, and good will and has caused

AJ&S to incur substantial expenses. AJ&S seeks compensatory and punitive damages, attorney's fees, and costs.

Local 142 seeks dismissal the claims of the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which requires dismissal of a complaint, or a portion of a complaint, that states no claim upon which relief can be granted. A court deciding a Rule 12(b)(6) motion must accept "the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). The court must draw all reasonable inferences in favor of the plaintiff without engaging in fact-finding. Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under the pleading standard of Federal Rule of Civil Procedure 8(a), a complaint needn't contain "detailed factual allegations," but the complaint's allegations "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of the claims being asserted and the grounds upon which they rest. Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

Local 142 sets forth two grounds for dismissal of AJ&S's claims. Local 142 first says the March 1 notice to "open" the contract for "negotiation" served as notice of termination of the existing CBA that prevented automatic renewal of the agreement. Local 142 says that the March 1 notice was sent to all members of The Group, including AJ&S, sixty days before expiration of the CBA and so constituted timely notice that the CBA would terminate on May 31. Local 142 next asserts that its disclaimer of representation of AJ&S voided the CBA, so AJ&S can't prevail on its claims under Section 301 of the LMRA, 29 U.S.C. § 185.

## A.

Local 142 challenges the allegation in AJ&S's complaint that no notice of termination of the CBA was sent. Local 142 says that any notice of a party's interest in changing the terms of an agreement is sufficient to prevent automatic renewal. According to Local 142, "where a collective bargaining agreement does not differentiate between a notice to amend and a notice to terminate for purposes of preventing renewal beyond the original expiration date, any notice prevents renewal."

Most decisions cited by Local 142 are distinguishable by their fact-specific nature – the language of the notice in combination with the language of the CBA – and none of those notices and agreements are the same as those at issue here. *See, e.g.* Oil, Chemical & Atomic Workers Int'l Union v. American Maize Prods. Co., 492 F.2d 409 (7th Cir. 1974) (CBA contained deadline to "amend certain

sections or articles of the agreement, only" or "to terminate the entire agreement;" union notified employer that it wanted to meet and confer for the purpose of "negotiating a new contract" or modifying the present agreement; court held: "To speak of modifying or the modification of the present agreement without any specification of portions to be modified could only mean the modification of the entire agreement and hence the termination of that agreement and the substitution of a new agreement."); Baker v. Fleet Maintenance, Inc., 409 F.2d 551 (7th Cir. 1969) (based on deadline in CBA for "written notice of desire to cancel or terminate" the agreement, court found union's notice that it desired to negotiate a new contract, rather than renew the old contract, constituted notice of termination); Paterson Parchment Paper Co. v. International Bhd. of Paper Makers, 191 F.2d 252 (3d Cir. 1951) (notice by union that it desired "a meeting with the Company for the purpose of discussing changes in the contract for the coming year" held to constitute a notice of termination of the existing CBA, which provided that "either party may terminate the [agreement] on not less than 60 days notice" and "should there be any delay in negotiating the new agreement," the old one would remain in effect until the new one is complete).

A more recent opinion from our court of appeals clarified the holdings in Oil, Chemical & Atomic Workers Union v. American Maize and Barker v. Fleet Maintenance. In Office & Professional Employees Int'l Union, Local 95 v. Wood County Telephone Co., 408 F.3d 314 (7th Cir. 2005), the evergreen clause provided that the CBA "shall automatically continue in full force and affect after

[its original expiration date] unless terminated by sixty (60) day written notice given by either party." 408 F.3d at 315. Local 95 sent notice to the employer of its "desire to reopen [the] Agreement and to negotiate on wages, hours and conditions of employment for a successor agreement," notice that the employer argued amounted to a notice of termination. The district court agreed with the employer, concluding that Fleet Maintenance and American Maize established a rule that any notice sufficient to initiate collective bargaining also terminates the old contract. The Seventh Circuit reversed, concluding that neither Fleet Maintenance nor American Maize "purports to establish such a rule; each treats the question at hand as the best way to understand a particular contract." 408 F.3d 316. According to the Wood County court, "'[r]eopen' and 'terminate' are different ideas as well as different words. Preserving that difference enables parties to negotiate a new bargain while the old one remains in force. Allowing an agreement to persist is the point of an evergreen clause (which is to say, an automatic rollover clause)." 408 F.3d at 315. The Wood County court's holding that each case should be judged on the language specific to the contract at issue is contrary to Local 142's claim that "any notice prevents renewal."

Local 142 also relies on the language of American Lawn Mower Co., 108 NLRB 1589 (1954), that the NLRB "has long held that when modification and termination clauses in the same contract are coterminous, notice under the modification clause is equivalent to notice to terminate for purposes of application of the contract-bar rule." 108 NLRB at 1591. Local 142 concludes that in this case

22

"the modification and termination 'clauses' are not simply 'coterminous,' they are one and the same (i.e., Article 30). Article 30 does not specify that the 'notice' necessary to prevent renewal must be for modification or termination or anything else. Thus, under NLRB jurisprudence, regardless of whether the March 1 notice is construed as notice to modify or to terminate, the union forestalled renewal."

The evergreen clause in the parties' CBA doesn't mention notice of termination, notice of amendment, or notice of modification – the clause only mentions "notice," without any further comment or definition. Counsel for the Pension Fund and Local 142 indicated at the motions hearing that based on industry custom and usage, the notice sent by the union should be understood as conveying an intent to terminate the existing CBA at the end of its term. But based on the Wood County case, a reasonable, alternative interpretation of Article 30 could be that the clause emphasizes negotiation over termination by stating that if notice isn't given, the CBA "shall remain in full force and effect until superseded by a new agreement." An action "should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995).

Because the parties' intent relating to the proper interpretation of the evergreen clause and of the notice provided by the union can't be determined without consideration of parol evidence, the motion to dismiss on this ground must be denied.

B.

Local 142 next claims that its March 1 notice to terminate the CBA was made before the union disclaimed interest in representing AJ&S, so Local 142's withdrawal of representation properly voided the CBA. Local 142 says its notice to The Group constituted a timely removal of AJ&S from the multi-employer bargaining unit, meaning that AJ&S wouldn't be a party to any future CBA negotiated between Local 142 and The Group. In support, Local 142 cites to the holding in Chef Solutions, Inc. v. Production and Maintenance Union, Local 101, No. 05 C 6146, 2006 WL 1722372 (N.D. Ill. June 19, 2006), that "[u]nder certain circumstances, unions are free to disclaim interest in representing employees without violating the [NLRA]. If there was a valid disclaimer, it legally voids the collective-bargaining agreement. Once a union has lawfully disclaimed interest in representing certain workers, then it necessarily follows that there is no longer a valid collective-bargaining agreement between the union and the employer. In the absence of a valid contract, a suit to enforce such a contract may not be sustained." 2006 WL 1722372 at *3 (internal quotation and citation omitted).

Just before the motions hearing, the parties filed a copy of a decision of the NLRB, dated December 11, addressing AJ&S's claim that Local 142 "failed to bargain in good faith by withdrawing from multi-employer bargaining and then disclaiming interest in representing employees of AJ&S Trucking, Inc. in violation of Section 8(b)(3) of the Act." The NLRB determined that the evidence before the Board showed

24

> that the union gave appropriate, timely notice of its withdrawal from multi-employer bargaining, and the Union unequivocally disclaimed interest in representing [AJ&S's] employees. The Union did not engage in any conflicting conduct subsequent to disclaiming interest, and did not violate Section 8(b)(3) by its actions.

Pltf. Supp. [docket # 51], Exh. 1. Local 142 has asked that the court take judicial notice of the Board's decision[2] and consider the decision in connection with the motion to dismiss.

Courts generally defer to interpretations of the NLRA by the NLRB "if [the NLRB's] factual findings are supported by substantial evidence and its legal conclusions have a reasonable basis in law," National Steel Corp. v. NLRB, 324 F.3d 928, 931 (7th Cir. 2003), but this record doesn't reveal the facts and law presented to and relied on by the Board. In addition, counsel for AJ&S represented at the hearing that AJ&S is appealing the Board's decision. Therefore, the court will deny the motion to dismiss without prejudice on Local 142's claim that its notice of withdrawal of representation was timely and sufficient.

V. CONCLUSION

Based on the foregoing, the court

(1) DENIES the motion for preliminary injunction of AJ&S Trucking, Inc. [docket # 14]; and

_____

[2] A court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

(2) DENIES the motion of Teamsters Union Local 142 to dismiss the third-party complaint [docket # 33].

SO ORDERED.

ENTERED:   January 21, 2014

                               /s/ Robert L. Miller, Jr.
                            Judge, United States District Court